UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:                                                    CASE NO. 05-21605

ROY FRISCHHERTZ CONSTRUCTION                              SECTION "B"
COMPANY, INC.

         DEBTOR                                           CHAPTER 11
***************************************************************************
ROY FRISCHHERTZ CONSTRUCTION
COMPANY, INC.
         PLAINTIFF

VERSUS                                                    ADV.P. NO. 06-1028

JON A. GEGENHEIMER,
JEFFERSON PARISH CLERK OF COURT
         DEFENDANT
***************************************************************************
JON A. GEGENHEIMER,
JEFFERSON PARISH CLERK OF COURT                           CONSOLIDATED WITH
         PLAINTIFF
                                                          ADV.P. NO. 06-1244
VERSUS

OHIO CASUALTY INSURANCE COMPANY
         DEFENDANT

## MEMORANDUM OPINION

This matter came on for a four day trial in November 2006 and February 2007 on the

complaint of Roy Frischhertz Construction Company, Inc. ("RFCC"), the debtor, against Jon A.

Gegenheimer, the Clerk of Court for Jefferson Parish (the "Clerk") seeking declaratory relief and

monetary damages arising out of a construction contract for the renovation of the Clerk's office.

The Clerk filed an answer and a counterclaim also seeking monetary damages.  By order dated

August 17, 2006 this matter was consolidated with an adversary proceeding commenced by the

Clerk of Court against Ohio Casualty Insurance Company ("Ohio Casualty"), surety for the

debtor on this project, claiming damages under the performance bond executed by Ohio
Casualty.

## I.      Background Facts

The Clerk put out a notice and request for bids pursuant to Louisiana's Public Bid Law.
RFCC was the lowest bidder and was awarded a contract in the amount of $225,300.00 to
remodel the Clerk's office.  The contract was signed on January 4, 2005, and the job was
originally to be completed 120 days from January 5, 2005 or by May 5, 2005.[1]  Ohio Casualty
executed payment and performance bonds in connection with the contract as required by the
general conditions portion of the contract.[2]  Various problems ensued and the renovation was not
completed on time.  The Clerk contends that the delays on the project were solely the fault of
RFCC.  He claims that he is entitled to damages, both for the delay and because he was required
to complete the project himself.  RFCC, on the other hand, argues that the delays were caused by
the Clerk, that it should not be liable for the delays and that it should be compensated for costs it
incurred because of the delays caused by the Clerk.  Additionally, RFCC claims that the Clerk
did not make payment according to the contract terms for work that was completed.

Further complicating the matter, as of August 29, 2005 when the project was still not
complete - even though almost four months past the contracted for completion date, Hurricane
Katrina descended upon New Orleans where the project was located causing severe destruction
and forcing a prolonged evacuation of the area.  After the hurricane the Clerk requested that

---

[1]  Exhibit 15.  The contract was furnished by the Clerk and the terms were neither
negotiated nor changed by RFCC. *See* Pre-trial Order at ¶ 8.

[2]  Exhibit 15 at pp. 56-58.

RFCC start work at the job site on October 4, 2005, the date that theJefferson Parish

Administration Building, where the Clerk's office was located, reopened.  RFCC was unable to

locate all of its personnel and subcontractors immediately, a situation that was not unusual in the

New Orleans area for quite some time after the hurricane, so RFCC recommenced work on the

project on November 2, 2005.  RFCC then experienced problems gaining access to the building

and performing the required work because of the building's management.

On December 6, 2005 RFCC filed a petition under Chapter 11 of the United States

Bankruptcy Code.  On February 7, 2006 RFCC filed the instant adversary proceeding against the

Clerk in this court.  On February 8, 2006 RFCC's attorney sent a letter to the Clerk stating that

RFCC was exercising its right to stop work on the project pursuant to section 37 of the contract's

general conditions because the Clerk had not paid application for payment  #7, which had been

submitted by RFCC on August 25, 2005.[3]

On April 11, 2006 the Clerk filed suit against Ohio Casualty in the 24th Judicial District

for Jefferson Parish, a Louisiana state court. Ohio Casualty removed the suit to the federal

district court, which then referred the matter to this court.  Ohio Casualty then moved to

consolidate that adversary proceeding with the adversary proceeding initiated by RFCC against

the Clerk.  The court granted that motion, and the cases proceeded to trial together.[4]

II.     **Legal Analysis**

In Louisiana parties are free to contract for any object that is lawful, possible, and

---

[3]  Exhibit 321.

[4]  The Clerk's suit against Ohio Casualty is adversary proceeding number 06-1244.

3

determined or determinable.[5]  Contracts have the effect of law for the parties.[6]  Interpretation of a contract is the determination of the common intent of the parties.[7]  When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent.[8]  Here the contract language is clear and the parties agree that it governs the dispute between them.  There is, however, a dispute as to the validity of one clause in the contract, section 15(C).  The court will first determine the validity of section 15(C) and will then determine what rights the parties have under the contract.

A.      Section 15(C), the "no damages for delay" clause.

The Clerk argues that RFCC has no cause of action against him for damages because of a provision in the contract limiting any remedies available to RFCC for delays caused by the Clerk to extensions of time and the Clerk's waiver of any liquidated damages claim.  Section 15(C) of the general conditions of the contract states:

> Apart from extension of time for unavoidable delays and the waiving of any applicable liquidated damages, in no event shall Owner or Design Professional be liable to the Contractor, any Subcontractor, and Supplier, or any other person or organization, or any surety for or any employee or agent of any of them, and no payment or allowance of any kind shall be made to the Contractor as compensation for damages because of hindrance or delay for any cause in the progress of the Work, whether such delay be avoidable or unavoidable.  Time limitations required by Owner shall be for the benefit of Owner and contractors under other contracts who have entered into such contracts with Owner in reliance on the time limitations set forth in these Contract Documents.  Any claim by Contractor for damages due to delay by another contractor shall be asserted against that contractor.  Contractor shall accept the risk of any delays caused by

---

[5]  Louisiana Civil Code Article 1971.

[6]  Louisiana Civil Code Article 1983.

[7]  Louisiana Civil Code Article 2045.

[8]  Louisiana Civil Code Article 2046.

4

the rate of progress of the Work to be performed under the Contract or other contract.

The Clerk argues that this clause, referred to by the parties as the "no damages for delay" clause, effectively prohibits RFCC from claiming damages.  RFCC, however, advances two separate arguments as to why the clause should not apply here.  First, RFCC argues that the actions of the Clerk in causing delays were so egregious as to nullify the no damages for delay clause under Louisiana Civil Code Article 2004.  Second, RFCC argues that Louisiana Revised Statute 38:2216(H) voids the clause as being against public policy.  The court will address each of these arguments separately.

### 1.    Did the actions of the Clerk nullify the no damages for delay clause?

RFCC argues that the Clerk's actions caused the delays on the project.  In its argument RFCC invokes Louisiana Civil Code Article 2004, which reads: "Any clause is null that, in advance, excludes or limits the liability of one party for intentional or gross fault that causes damage to the other party."  The gist of RFCC's argument is that the actions by the Clerk in delaying the project were so egregious that they constitute intentional or gross fault and therefore, the no damages for delay clause should not apply and RFCC should be able to collect delay damages from the Clerk.  In *Pellerin Construction, Inc. v. Witco Corp.,* 169 F.Supp.2d 568 (E.D.La 2001) the court found that under Louisiana law, no damages for delay clauses are enforceable in the absence of evidence of intentional or gross fault.[9]

In *Houston Exploration Company v. Halliburton Energy Services, Inc.,* 269 F.3d 528 (5th

---

[9] *Pellerin Construction, Inc. v. Witco Corp.,* 169 F.Supp.2d 568, 585 (E.D.La 2001).  *See also* comment (c) to Louisiana Civil Code Article 2004: "Under this Article, a clause relieving a party from liability for damage caused by delay is valid."

Cir. 2001) the United States Fifth Circuit Court of Appeals discussed Article 2004 and the

standard of gross negligence that must be found to invalidate a contractual provision thereunder.

> Under Louisiana law, gross negligence is willful, wanton and reckless conduct
> that falls between intent to do wrong and ordinary negligence. We [have] stated .
> . . that gross negligence is substantially and appreciable (sic) higher in magnitude
> than ordinary negligence. Other courts have defined gross negligence as the
> entire absence of care, the want of even slight care and diligence, and the utter
> disregard of the dictates of prudence, amounting to complete neglect of the rights
> of others. At least one Louisiana court stated that one is grossly negligent when
> he has intentionally done an act of unreasonable character in reckless disregard of
> the risk known to him, or so obvious that he must be taken to have been made
> aware of it, and so great as to make it highly probable that harm would follow.
> Mere inadvertence or honest mistake does not amount to gross negligence.[10]

*Pellerin Construction* and *Houston Exploration* set a high standard for intentional or gross fault.

Under this standard, the evidence of the Clerk's actions are insufficient to constitute intentional

or gross fault in causing delays on the project. RFCC claims that the actions of Mrs.

Gegenheimer, the Clerk's wife who made the design choices during the renovation, caused

delays in the project in that she did not pick out certain stain and paint colors timely and that she

made changes to some of the woodwork profiles after they had been fabricated. At trial the

evidence presented showed that at most these actions may have contributed somewhat to the

delay of the project.[11] No evidence was presented by RFCC at trial sufficient to convince the

---

[10] *Houston Exploration Company v. Halliburton Energy Services, Inc.,* 269 F.3d 528,
531-32 (5th Cir. 2001)(internal citations omitted).

[11] Leonard Bellar, the architect and owner's representative for the job, did testify that
Mrs. Gegenheimer made the selection of paint colors, molding, layout, stain colors, stain type
and wood profiles. Under cross examination, he stated that Mrs. Gegenheimer did change her
mind as to the profiles after they were fabricated. Trial transcript of November 14, 2006 at p.
204. The court notes here, that trial transcripts were ordered for the first two days of trial but not
for the second two days. Accordingly, where possible, the court will provide reference to
transcript pages, and, where not possible, the court will simply note the name of the witness and
the date of the testimony.

court that the actions of Mrs. Gegenheimer rose to the level of gross fault or negligence required

by Article 2004 to invalidate the no damages for delay provision.

RFCC also argues that the no damages for delay provision should be nullified under

several alternate theories; i.e., that the actions of the Clerk either 1) constituted active

interference with the contract; 2) caused delays that were so unreasonable that they constitute

abandonment of the contract; 3) breached a fundamental obligation of the contract; 4) failed to

grant justified extensions of time; and 5) that circumstances not contemplated by the parties at

the formation of the contract arose resulting in numerous delays.  In support of these arguments

RFCC relies primarily upon *PYCA Industries, Inc. v. Harrison County Waste Water*

*Management Dist.,* 177 F.3d 351 (5th Cir. 1999).  The court declines to address these additional

theories, however, because RFCC has not shown that they exist under Louisiana law; the *PYCA*

case was decided under Mississippi law, which is significantly different from Louisiana law and

therefore, does not apply here. RFCC also cites numerous cases from other jurisdictions in

support of its argument that these additional legal theories should apply; these cases also do not

involve Louisiana law and therefore will not be considered by the court.[12]

### 2.       Louisiana Revised Statute § 38:2216(H).

RFCC next argues that LSA R.S. § 38:2216(H) voids the no damages for delay clause

found in section 15(C) of the contract.  R.S. § 38:2216(H) reads:

Any provision contained in a public contract which purports to waive, release, or

---

[12] RFCC does not argue that a contract that on its face prohibits one party, the contractor, from seeking any damages for delay but allows the other party, the owner, to seek stipulated damages for delay under two different provisions is an adhesion contract or otherwise void as against public policy.  *See* pp. 17-24 *infra* for the court's interpretation of the provisions for stipulated damages claimed by the Clerk for delay.

extinguish the rights of a contractor to recover cost of damages, or obtain equitable adjustment, for delays in performing such contract, if such delay is caused in whole, or in part, by acts or omissions within the control of the contracting public entity or persons acting on behalf thereof, is against public policy and is void or unenforceable. When a contract contains a provision which is void and unenforceable under this Subsection, that provision shall be severed from the other provisions of the contract and the fact that the provision is void and unenforceable shall not affect the other provisions of the contract.

No courts have interpreted this provision as it is a relatively new addition to the Louisiana Revised Statutes.[13]  "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature."[14]  The language of the above statute appears to be fairly straightforward and apparently is meant to bar "no damages for delay" provisions from public contracts.  The general conditions to the contract make it clear that this is a public works project within the meaning of R.S. § 38:2216.

The Clerk argues that the debtor should be precluded from raising this legal theory in its defense as it was not raised until the pre-trial order was filed in this matter.  In support of his argument the Clerk cites two cases.  The court finds both inapplicable to the case before it.  First, *Flannery v. Carroll*, 676 F.2d 126 (5th Cir. 1982), cited for the proposition that it is manifestly unjust to allow RFCC to advance a new legal theory for the first time in the pre-trial order, involved a completely different set of facts from those presented here.  In *Flannery* the plaintiff raised a state law cause of action in its complaint and then failed to include it in either the pre-trial order or the interrogatories and instructions submitted to the jury.  After the jury returned a

---

[13]  Revised Statute § 38:2216(H) was enacted in 1990.

[14]  Louisiana Civil Code Article 9.

verdict on a second, related federal law cause of action that had been included in the pre-trial

order and the jury instructions and interrogatories, the plaintiff filed a motion for judgment on

the verdict on the state law cause of action arguing that because the substantive elements of its

state law cause of action and the federal law cause of action that had been submitted to the jury

were the same, it was entitled to judgment under the state law cause of action.  The district court

disagreed finding that the elements of the two causes of action were different.  On appeal the

Fifth Circuit upheld the district court stating:

> The pre-trial order is an indispensable mechanism in the district court.  Its
> purpose is to determine which of the claims pleaded will actually be tried.  The
> claims, issues, and evidence are limited by the order and the course of the trial is
> thereby narrowed to expedite the proceeding.  Once the order is entered, it
> controls the scope and course of the trial.  If a claim or issue is omitted from the
> order, it is waived.[15]

*Flannery* does not apply to the case at bar, first, because here the Clerk is objecting to a legal

defense being raised, not a claim or cause of action, and second, because this alternate legal

defense was presented in the pre-trial order and in RFCC's pre-trial memorandum, not after a

jury trial as in *Flannery*.

The Clerk also cites *Sanai v. Sanai,* an unpublished order from the Western District of

Washington in which the court ruled on a motion for summary judgment.  The *Sanai* court

declined to allow the plaintiff in that case to continue, under a new legal theory, two causes of

action that had been dismissed over a year before.  The court found that because the causes of

action had already been dismissed, discovery had closed, the deadline for dispositive motions

had passed, and it was the eve of the trial on the remaining causes of action, it would not allow

---

[15]  *Flannery v. Carroll*, 676 F.2d 126, 129 (5th Cir. 1982)(internal citations omitted).

the plaintiffs to proceed under their new legal theory on the dismissed causes of action.  In so

ruling the court noted that the plaintiffs conceded that a change in theory is not permissible

where the opponent would be prejudiced on the merits and specifically found that to allow the

plaintiffs to proceed under their new legal theory would prejudice the defendants on the merits.[16]

Under the Federal Rules of Civil Procedure made applicable to this proceeding by the

Federal Rules of Bankruptcy Procedure, RFCC is simply required to set forth a "short and plain

statement of the claim showing that the pleader is entitled to relief."[17]  There is no requirement

that the plaintiff plead legal theories.[18]  So long as the alteration in legal theory does not

prejudice the opposing party in maintaining a defense on the merits, there is no reason why a

party should not recover on a valid claim.[19]  The Clerk argues that by allowing RFCC to raise the

new legal theory he was prejudiced in the preparation and trial of his case in that the Clerk

believed he only had to refute RFCC's claims of fraud, bad faith, or gross negligence in order for

the no damages for delay provision to be upheld.  The pre-trial order was signed and filed on

November 9, 2006, so this legal defense raised by the debtor was known to the Clerk's counsel

four days before the commencement of the trial on November13, 2006 and several months

before the Clerk put on his defense in February 2007.  The court finds that the Clerk was not

prejudiced by the debtor's argument that R.S. § 38:2216(H) invalidates the no damages for delay

---

[16] *Sanai v. Sanai,* 2005 WL 1172437 (W.D.Wash.)(citing *Hanson v. Hoffman,* 628 F.2d 42, 53 (D.C.Cir.1980).

[17] Fed.R.Civ.P. 8(a).

[18] *Vidimos, Inc. v. Laser Lab Ltd.,* 99 F.3d 217, 222 (7th Cir. 1996).

[19] *Id.  See also* 5 Wright & Miller, *Federal Practice and Procedure* § 1219 at 282-83 (2004).

clause.  Further, the statute clearly states that any public contract cannot waive the contractor's

rights to recover cost of damages; the application of the statute does not depend on the Clerk

proving anything and applies as a matter of law to nullify the no damages for delay provision in

the contract.  In any event, the application of the statute is really of no moment in this case as

will be seen below; the court is not awarding any delay damages to RFCC.

### B.      The debtor's claim for damages.

Because the court finds that the no damages for delay clause is severed from the contract

pursuant to R.S. § 38:2216(H), the court must evaluate all of RFCC's claims for damages,

including damages for delay.  RFCC claims damages in the following amounts: 1) $30,347.55

for work performed and for which payment was requested on pay applications submitted to the

Clerk of Court; 2) $4,042.00 for additional painting subcontracting costs; 3) $21,424.00 in extra

costs for changes that were set forth in requests for change; 4) $27,411.75 for overhead costs

incurred after the initial May 5, 2005 deadline for project completion had passed; and 5)

$8,133.95 in costs incurred to pay a supervisor after the initial May 5, 2005 deadline for project

completion had passed.[20]

### 1.      Payment applications.

Under section 37 of the general conditions, RFCC was to submit periodic pay

applications to the architect, Bellar, who then had ten days either to certify the pay application

for payment and forward it to the Clerk for payment or to return the application to RFCC

indicating the architect's reasons for refusing to certify it.  Upon receiving the pay application,

the Clerk was obligated either to pay RFCC or give written reasons for failing to pay.  RFCC

---

[20]  See pre-trial order (P-118) at pp. 45-46.

submitted evidence showing that it had submitted three pay applications that were not paid.

Application number 7 in the amount of $17,300.70 was submitted to Bellar on August 25,

2005.[21] Application number 8 in the amount of $3,706.20 was submitted on February 7, 2006.[22]

Application number 9 in the amount of $9,340.65 was submitted on February 28, 2006.[23]  These

applications totaling $30,347.55 were not paid, and no written reasons were given by either the

architect or the Clerk for non-payment.[24]  Thus, the evidence supports a finding that the pay

applications were properly submitted by RFCC, and because there was no objection to them in

writing as required by the contract, the Clerk should make payment.

The Clerk correctly argues that under section 16(F) of the general conditions, he has the

right to deduct liquidated damages from progress payments.  Thus, the court holds that any

amount that the court may find RFCC owes the Clerk in liquidated damages shall be offset by

the $30,347.55 that the Clerk owes RFCC on the pay applications.  The court also finds,

however, that section 16(F) does not excuse the Clerk from his obligation to provide written

reasons for nonpayment, and by failing to do so, the Clerk breached the contract.

**2.    Changes to the contract and additional work.**

RFCC next claims it should be awarded $4,042 for additional costs incurred on the

painting subcontract and $21,424 for changes that were approved.  The court first notes that the

evidence presented by RFCC to support its claim for these amounts is woefully inadequate.  The

---

[21]  Exhibit 261.

[22]  Exhibit 318.

[23]  Exhibit 327.

[24]  Trial transcript of November 14, 2006 at pp. 186-88.

court was able to ascertain from the change orders submitted as evidence that were legible and had been signed by the architect that change orders 2, 3, 4, 6, 7, 10 and 11 were approved for various amounts.[25]  The court also was able to determine that change orders 1 and 5 reflected credits given to the Clerk.[26]  It appears from the court's examination of pay applications 7, 8 and 9 that the changes approved in change orders 2, 3, 4, 6, 7, and 10 were billed for in those payment applications.  Thus, to allow RFCC to recover those amounts when the court has already determined that the Clerk must pay those pay applications would effect a double recovery for RFCC.  Change order 8 was a request for extension of time and need not be addressed here.  No evidence was submitted by RFCC that change orders 9 or 12 were approved by the Clerk.  The court can ascertain from looking at pay application 7 that change order 9 appears to be for some cabinets and is in the amount of $10,520 but no evidence was presented that these cabinets were ever received or installed by RFCC.  From its review of the evidence presented, the court was unable to ascertain what type of work or materials change order 12 might have encompassed.  Change order 11 approved the installation of a floor drain; this was signed by the architect, and testimony showed that this work was actually completed.[27]  The court awards the $1,321 for change order 11 but the rest of the claim for $21,424 for change orders is denied.

Additionally, no evidence was presented that would support the claim of an additional $4,042 for the painting subcontractor.  No change orders were presented to support this claim.

---

[25]  Exhibits 132, 135, 175, 176, 174, 214 and 239 respectively.

[26]  Exhibit 261 in the section of pay application 7 that describes the work done.

[27]  Exhibit 239; Trial transcript of November 13 at pp. 74-79.

13

Under the terms of the contract, section 32(E) requires that a written change order be executed in order to effect a change in the contract price. Thus, the court finds that no change order or other evidence supports the claim for the $4,042 and that claim is denied.

> ### 3.      Eichleay damages.

RFCC claims in the pre-trial order that it is entitled to $27,411.75 for overhead costs incurred after the initial May 5, 2005 deadline for project completion had passed. In its post-trial proposed findings of fact, this overhead costs number changes to $23,424.84. RFCC contends that these costs were incurred because of delays caused by the Clerk and that the court should use the "Eichleay formula" to calculate the overhead costs amount. The Eichleay formula was created as a method of calculating overhead costs, i.e., those costs expended for the benefit of the whole business that cannot be attributed to any particular contract, that should be reimbursed if work on a government contract was suspended.[28] The formula "seeks to equitably determine allocation of unabsorbed overhead to allow fair compensation of a contractor for government delay."[29]

In order to recover overhead under the Eichleay formula, the contractor must satisfy two prerequisites: First, the contractor must show a government imposed delay which places the contractor on standby, and second, the contractor must show he is unable to take on other work while on standby.[30] The contractor bears the burden of proof on these two elements and is

---

[28] *Safeco Credit v. U.S.,* 44 Fed.Cl. 406, 415 (1999).

[29] *Wickham Contracting Co. v. Fischer,* 12 F.3d 1574, 1578 (Fed.Cir. 1994).

[30] *Safeco* at 416-17. *See also American Renovation & Construction Co., Inc. v. U.S.,* 45 Fed.Cl. 44 (1999) (to recover Eichleay damages, a contractor must show that it was on standby, required to resume work at a moment's notice, and thus was unable to take on other work; a contractor is on "standby" only when work is suspended for a period of uncertain duration and

14

required to prove them both in order to make a prima facie case for recovery under Eichleay.  If he meets his burden, the government must then present rebuttal evidence showing the contractor did not or should not have suffered any loss because it was able to reduce its overhead or take on other work during the delay.[31]  In the instant case, RFCC presented no evidence as to either of the prerequisites for proving Eichleay damages, and the court finds that it has not made a prima facie case for recovery of damages under the Eichleay formula.  This claim is therefore denied.

### 4.      Extra supervision costs.

Finally, RFCC claims it is entitled to $8,133.95 for extra supervision costs incurred after the initial May 5, 2005 deadline for project completion had passed.  In the pre-trial order, RFCC outlined the basis for this claim:

> There were a total of 1346 supervision hours incurred by RFCC from May 5, 2005, through January 31, 2006.  There were 121.5 hours of direct supervision related to this project at $52.50 per hour equaling $6,378.75 and 1.5 overtime hours of direct supervision related to this project at $78.75 per hour totaling $118.13.  This project represents 9.123% of total supervision hours of RFCC. Storm pay for supervisors was $1,500.  9.138% of storm pay is 137.03.[32]

At trial no evidence related to supervision costs incurred by RFCC after May 5, 2005 was presented to the court, so there is no support for the claim that 121.5 hours of supervision were incurred in direct supervision of the Clerk's project.  Further, at trial the project manager for RFCC testified that the contract bid submitted by RFCC specified $35 per hour for supervisors, so it is not clear to the court why RFCC is calculating extra supervision costs at $52.50 per

---

the contractor can at any time be required to return to work).

[31]  *Safeco* at 416.

[32]  Pre-trial order (P-118) at p. 46.

hour.[33]  It is also not clear to the court what the $1,500 of storm pay for supervisors was or why

that should be charged to the Clerk, nor why RFCC is charging the Clerk with $1,500 plus the

$137.03 that is apparently a percentage of storm pay.  No support exists for RFCC's claim for

$8,133.95 for extra supervision costs, and that claim is therefore denied.

### C.      The Clerk of Court's claim for damages.

The Clerk of Court makes his claims for damages as follows: 1) $1,000 per day for 420

days for liquidated damages; 2) additional costs expended in completing the project; 3) $91,665

for failure to provide adequate supervision; and 4) attorneys' fees and costs.[34]

### 1.      Damages for failure to provide adequate supervision.

The court first examines the Clerk's claim for $91,665 based on RFCC's failure to

provide full time supervision on the project under section 22 of the general conditions.  The

court agrees with the Clerk that the contract required full time supervision and that RFCC failed

to provide full time supervision.  The Clerk's remedy for this failure, however, can be found

under section 34 which provides:

> If the Contractor should . . . otherwise be guilty of a substantial violation of any
> provision of the Contract, then the Owner, upon the certificate of the Design
> Professional that sufficient cause exists to justify such action, may, without
> prejudice to any other right or remedy and after complying with paragraph C
> below, terminate the employment of the Contractor.

Clearly RFCC was violating a provision of the contract by failing to provide full time

supervision, and clearly this was something the architect on the project had discussed with

---

[33] Trial transcript of November 13, 2006 at p. 248.

[34] See Clerk's answer and counterclaim (P-4) and amended answer and counterclaim (P-63).

16

RFCC.  If RFCC did not resolve this issue to the satisfaction of the Clerk, the Clerk had the right

to terminate the contract.  That is the remedy provided for in the contract.  There is no evidence

that the architect (design professional) ever made the certification required by this section so

apparently the Clerk chose not to avail himself of this remedy.  The court will not create a new

remedy where the contract provides a remedy agreed upon by the parties.

> **2.      Stipulated damages for delay.**

The Clerk next requests stipulated damages for delay in the amount of $1,000 per day for

420 days.  In Louisiana a party may demand either the stipulated damages or performance of the

principal obligation, but he may not demand both unless the damages have been stipulated for

delay.[35]  Here the damages were stipulated for delay.  Damages for delay in the performance of

an obligation are owed from the time the obligor is put in default.[36]  When the term for the

performance of an obligation is fixed, as it was here, the obligor is put in default by the mere

arrival of that term.[37]  Recovery of damages for delay does not preclude recovery of other

damages.[38]

The Clerk's calculation of the delay damages runs from the time the project was

supposed to be completed, May 5, 2005 to the date the project was actually completed by

another contractor, September 18, 2006 less the 81 days of extended time for completion the

Clerk granted RFCC on the project.  The court does not agree with the Clerk's argument that the

---

[35]  Louisiana Civil Code Article 2007.

[36]  Louisiana Civil Code Article 1989.

[37]  Louisiana Civil Code Article 1990.

[38]  Comment (c) to Louisiana Civil Code Article 1989.

17

liquidated damages should continue to run past the time that RFCC filed suit on the contract, and

the Clerk offers no authority showing why the delay damages should continue to run through the

date of completion after the parties clearly evidenced their intent that RFCC would not continue

to perform the contract.  RFCC argues that the delay damages should stop accruing on February

8, 2006, the date RFCC sent its letter notifying the Clerk of its intention to stop work on the

project.[39]  According to the Civil Law Treatise on Obligations:

> When the parties have stipulated damages for delay and also for nonperformance,
> and after having delayed his performance the obligor ultimately fails to perform
> entirely, the obligee may then recover both the damages stipulated for delay,
> *covering that period during which the obligor's performance was still expected,*
> and also the damages stipulated for nonperformance.[40]

The Clerk acknowledged the receipt of the February 8, 2006 letter on February 10, 2006 and the

Clerk's accountant testified that upon receipt of this letter the Clerk undertook to finish the

project himself.[41]  This proved to the court's satisfaction that after receipt of the letter on

February 10, 2006, the Clerk no longer expected RFCC to perform its obligations under the

contract.  The court will allow liquidated damages for delay only through February 10, 2006.

According to the court's calculation, there are 281 days between May 5, 2005 and February 10,

2006, which means the Clerk's maximum claim for liquidated damages for delay is for 281 days.

The court then looks to whether there were any extensions of time that were or should have been

given to RFCC that would reduce this number.[42]

---

[39]  Exhibit 321.

[40]  6 La. Civ. L. Treatise, Law of Obligations § 13.24 (2nd ed.)(emphasis added).

[41]  Testimony of Jim Butler on February 16, 2007.

[42]  *Hebert v. Weil,* 39 So. 389 (La. 1905)(delays in construction caused by owner should
be deducted from days of total delay).

18

The Clerk credited RFCC with 81 days, which included the 40 day period between August 25, 2005 and October 4, 2005 when the Clerk's office was closed due to Hurricane Katrina, an additional 14 days after that to allow RFCC time to gather its personnel to begin working again after the storm, and 27 days allowed before the storm for various delays.[43]  The court finds that this does not take into account that change orders signed by the architect allowed for 4 days to fix some lighting problems, 34 days for the change in the paint, for a total of 38 days allowed due to extra work.[44]  The court finds that 38 days rather than 27 days should be credited to RFCC prior to the hurricane through properly submitted change orders.  The court finds the 54 days credit given to RFCC for the hurricane to be sufficient.  The court also finds, however, that some additional time should have been allowed because after the hurricane, the building's ventilation system was damaged and RFCC was prohibited by the building's management from performing staining work until November 30, 2006.[45]  Thus the court finds that RFCC is entitled to an additional 43 days of credit for the time between October 18, 2006 and November 30, 2006 for delays beyond its control due to the condition of the building in which the Clerk's office was located.

The court further finds that change order 11 for the removal of an old floor drain in the bathroom and the installation of a new floor drain improperly denied RFCC a time extension for the work performed.[46]  Testimony indicated that the floor drain problem existed prior to the

---

[43]  Testimony of Jim Butler on February 16, 2007.

[44]  Exhibits 135 and 132.

[45]  Trial transcript of November 13, 2006 at p. 158.

[46]  Exhibits 239 and 277.

beginning of the project, that it was discovered by RFCC and reported to the architect, that the

architect initially told RFCC that the building maintenance people would take care of the

problem, but that the architect subsequently asked RFCC to fix the drain and approved a change

order.  Despite this the architect denied the five days of additional time requested by RFCC to

complete the work.[47]  The court finds that it took approximately five days to complete the extra

work on the floor drain, and thus, RFCC is entitled to the additional five days it requested.[48]

Finally, the court considers the delay caused by the changes to the door casing profiles

made by the Clerk after RFCC's subcontractor delivered incorrect door casing profiles to the

project.  Although the evidence shows that the change requested by the Clerk caused some delay,

it also shows that RFCC was responsible for the initial problem of the incorrect work.  There was

testimony that it would have taken two weeks to correct the problem if no change had been

made.[49]  There was also testimony that once the change had been approved by the Clerk, the new

casing would take two weeks to manufacture.[50]  Thus, it appears that the time between the

discovery of the error and the time the new profile was approved by the Clerk can be attributed

to the Clerk deciding to change the profile of the door casing, and cannot be charged to RFCC

under the liquidated damages provisions of the contract.  Testimony showed that RFCC and its

subcontractor were informed that the Clerk wanted to change the door casing on or about March

17, 2005 and that the change was finally approved by the Clerk on May 5, 2005.  There are 49

---

[47]  Trial transcript of November 13, 2006 at pp. 73-79; Exhibits 239 and 277.

[48]  Exhibit 279, showing the change order was approved on November 3, 2005 and the
floor drain work was completed by November 9, 2005.

[49]  Trial transcript of November 13, 2006 at p. 120.

[50]  Testimony of Roland Fangue on February 15, 2007.

20

days between these two dates.  To sum up, of the 281 days of liquidated damages for delays claimed by the Clerk; the court finds that 189 days of those delays cannot be attributed to RFCC. Thus, the Clerk is entitled to only 92 days of liquidated damages for delay.

The Clerk asks that the delay damages be calculated at $1,000 per day as specified in the contract.  There are two separate liquidated damages provisions in the contract documents.  In the agreement itself, there is a liquidated damages provision for delay specifying $500 per day for each day of delay.  In the general conditions to the contract, sections 16(A) &(B) state that the parties recognize that time is of the essence for the project and reiterate the aforementioned $500 per damages clause.  But then section 16(E) provides for an additional $500 per day of delay damages for such things as, but not limited to: 1) Extended architectural and/or engineering fees; 2) Extended construction management fees; 3) Extended owner's overhead and personal expenses; and 4) Owner's other costs directly related to the delay in completion beyond the contract times.

Under Louisiana Civil Code Article 2009, "an obligee who avails himself of a stipulated damages clause need not prove the actual damages caused by the obligor's nonperformance, defective performance, or delay in performance."  Thus, the Clerk is not required to prove the damages he sustained.  Stipulated damages, however, should reasonably approximate the damages suffered by the obligee and not be punitive in nature:[51]

> Indeed, it has been recognized that the damages stipulated by the parties may exceed actual damages.  Nevertheless, an excess which according to clear circumstances of the case is unreasonable will invite the court to exercise its public policy prerogative of modifying the stipulated amount.  That is so because, in spite of their contractual freedom, parties may not avail themselves of a

---

[51] *Carney v. Boles*, 643 So.2d 339, 343 (La.App. 2 Cir. 1994).

21

stipulated damages clause as a subterfuge to allow either one or both of them the recovery of damages that are punitive rather than compensatory.[52]

The Civil Code states that stipulated damages may not be modified by the court unless they are so manifestly unreasonable as to be contrary to public policy.[53]

> It should be clear that whether or not such damages are unreasonable is a determination that will result from contrasting the evaluation contained in the pertinent clause with an evaluation of the real loss sustained by the aggrieved obligee. The latter need not be an accurate evaluation, or assessment, of the kind usually resulting from detailed proof, but rather a sort of spontaneous evaluation that can be made from the clear circumstances of the case.[54]

When stipulated damages in a contract do not bear any reasonable relationship to the actual damages suffered, courts have reduced the amount of the damages recoverable.[55]

While there are not many cases interpreting Article 2012, those cases where the Louisiana courts have found stipulated damages so manifestly unreasonable as to be against public policy have compared the amount of the stipulated damages to the underlying contract amounts in making their findings. For example, in *Carney v. Boles,* 643 So.2d 339 (La.App. 2 Cir. 1994), the court examined a stipulated damages provision that gave a couple a full year's salary of $125,000 if they were terminated from their employment before their three year employment contract ended. The couple's contract was in fact terminated before they had been employed for three years because their employer, a bank, was taken over by a receiver. The couple was immediately re-employed, however, under substantially the same terms of their

---

[52]  6 La. Civ. L. Treatise, Law of Obligations § 13.17 (2d ed.).

[53]  Louisiana Civil Code Article 2012.

[54]  6 La. Civ. L. Treatise, Law of Obligations § 13.18 (2d ed.).

[55]  *Carney*, 643 So.2d 339.

previous employment, so the contract's termination did not have a negative effect on their income. The court held that it would be a windfall for them to collect $125,000 because they were never actually out of work, and the stipulated damages provision did not in any way reflect the actual damage they had suffered and reduced the damages to $21,000.

In *Philippi v. Viguerie*, 606 So.2d 577 (La.App. 5 Cir. 1992) the plaintiff sued on a non-compete agreement for a business he had purchased for $141,000. The agreement stipulated that for each violation of the non-compete clause the penalty was $1,000. The defendant/former business owner was found to have violated the agreement 137 times. The trial court found the stipulated damages unreasonable, "based on the fact that to enforce the $1,000 per violation would effectively return to plaintiff the entire amount of the purchase."[56] The court reduced the stipulated damages to $200 per violation, and the appellate court upheld the decision.

In the case before the court, the total contract price after change orders was $242,905; if the court awarded delay damages at $1,000 per day as requested by the Clerk, the delay damages would total $92,000 or approximately 38% of the total contract price. Because, as detailed below, the court also finds that the Clerk is entitled to its costs of completion, the court holds that an award of an additional $92,000 for delay in this situation is manifestly unreasonable and against public policy; it would allow the Clerk to recover over half of the contract price in damages even though the contract was approximately 86% complete when RFCC left the job.[57]

--------

[56] *Philippi* at 580.

[57] RFCC was paid $186,568 by the Clerk, and the court has awarded RFCC another $31,669 on the contract in this litigation bringing the total amount paid on the contract to $218,237, or 90% of the total contract price. Also, testimony by RFCC's project manager indicated that RFCC had completed approximately 86% of the work when it left the job. Trial transcript of November 13, 2006 at p. 211.

23

In its review of the stipulated damages section of the contract, the court finds that the $500 per day detailed in section 16(E) of the contract should be sufficient to reasonably approximate the Clerk's actual damages.  The additional $500 per day on top of that appears to be punitive in nature.  Thus, the court will enforce only one $500 per day damages provision, and the Clerk is therefore entitled to $46,000 in delay damages.

### 3.    Additional costs incurred to complete the project.

Section 34 of the general conditions gives the Clerk the right to complete the project himself upon termination of the contract.  Additionally, under Louisiana law, a party is entitled to recover damages for nonperformance or incomplete performance in addition to delay damages: "Even if the parties stipulated damages for delay but not for nonperformance, and after having incurred a delay the obligor ultimately fails to perform entirely, the obligee is entitled, for the period of delay, to the damages stipulated therefore, and in addition to damages for nonperformance measured by the magnitude of his actual loss."[58]

At trial the Clerk attempted to present evidence of the additional costs he incurred to complete the project after RFCC stopped work on the project through an expert witness, James Butler.  RFCC moved to strike Butler's testimony because it relied on a report containing a summary of the damages that had not been furnished to RFCC beforehand.[59]  In its post trial brief the Clerk argues that the court improperly excluded the summary of damages and the testimony of Butler to the extent that it was based on that summary.  The Clerk argues that the summary was properly admissible under Federal Rule of Evidence 1006.  The court's basis for

---

[58]  6 La. Civ. L. Treatise, Law of Obligations § 13.24 (2d ed.).

[59]  Federal Rules of Civil Procedure 26(a)(2)(B) and 37(c)(1).

24

excluding the summary, however, was that the court viewed the summary as being in the nature

of an expert report that was not furnished to RFCC prior to its presentation in court on February

16, 2007, despite the fact that it had been prepared in early November 2006.

After conducting its own research, the court has reconsidered its ruling excluding the

summary and the testimony of Butler insofar as it relied on the summary.  After reviewing

Butler's testimony, it appears that Butler was <u>not</u> an expert witness retained for purposes of the

litigation, nor was Butler an employee of the Clerk whose duties regularly involve giving expert

testimony.[60]  Butler testified that he had been a CPA for 33 years, that the Clerk was a client, and

that he worked with the Clerk's accounting staff to assist the Clerk with management of and

compliance with the Clerk's public contracts.  He offered testimony of the fact or hybrid

fact/expert nature and not purely expert testimony.  Thus, Butler appears to be more correctly

categorized as, "an expert whose information was not acquired in preparation for trial but rather

because he was an actor or viewer with respect to transactions or occurrences that are part of the

subject matter of the lawsuit."[61]  This means Butler should be treated as a fact witness, and as

such there was no duty to produce an expert report.[62]

Although the Clerk made a proffer of the summary prepared by Butler, the summary does

not contain enough information for the court to make an evaluation of the costs incurred by the

Clerk in completing the project after RFCC terminated the contract.  Thus the court will not rule

on the Clerk's claim for cost of completion damages but will reopen the record for the taking of

---

[60]  Fed.R. Civ.P. 26(a)(2)(B).

[61]  The Advisory Committee notes to the 1970 Amendment of Fed.R.Civ.P. 26(b)(4).

[62]  *Id.  See also* 8 Wright, Miller & Marcus, Federal Practice and Procedure Civil 2d §
2033 (1994).

additional evidence related to this narrow question.  The summary will be treated as provided for

in Rule 1006, Federal Rules of Evidence.  The summary was already made available to RFCC at

the second phase of the trial in February 2007, but Rule 1006 requires the original writings, or

duplicates, forming the basis for the summary must be made available for examination, or

copying, or both, by RFCC at a reasonable time and place.  The Clerk states in his post trial

memorandum that he has already complied with Rule 1006, but to the extent that he has not, he

will be required to furnish all underlying documents.  RFCC will have a full opportunity for

cross examination of any evidence put forth by the Clerk in either the summary or Mr. Butler's

testimony.

 4. **Attorneys' fees and costs.**

The Clerk also makes a claim for attorneys' fees and costs.  No argument was submitted

in the post trial brief supporting this claim.  The court can only assume that the Clerk attempts to

collect attorneys' fees and costs under some unidentified provision of the contract.  Because the

court has found that both parties have breached the contract, each party shall bear its own costs

and attorneys' fees.

## III.    Conclusion

This is an unfortunate case in which the illness of Mr. Frischhertz, the principal of the

debtor, the unrealistic initial bid price and 120 day completion time, the insistence of Mrs.

Gegenheimer that the stain and paint colors and the wood profiles be to her exacting standard

and taste, and last but not least, the difficulties in locating employees and sub-contractors after

Hurricane Katrina all contributed to substantial, unforseen delays and expense.  Some fault can

be properly assigned to both parties to the contract.  After balancing all the claims and weighing

26

the evidence, the court is convinced that RFCC breached the contract by delaying the project and

by failing to complete the project.  For that the Clerk is entitled to $46,000 in delay damages and

is also entitled to offer additional evidence for its cost of completion claim.

The court also finds that the Clerk breached the contract by failing to make payment to

RFCC for work performed and by failing to provide written reasons for the failure to make

payments when they were due as required by the contract.  For that, RFCC is owed $30,347.55

as reflected in payment application numbers 7, 8 and 9.  RFCC is also entitled to $1,321 for the

work completed under change order 11 that apparently was completed but was not billed in any

pay application.  The Clerk is entitled under the terms of the contract to withhold progress

payments when liquidated damages are due, and therefore the net result is that RFCC owes the

Clerk $14,331.45 ($46,000 less $31,668.55) plus whatever amount the court later determines the

Clerk fairly expended in completing the project.  Ohio Casualty has not provided any defense to

the Clerk's claim against it, and the court finds that Ohio Casualty is liable in solido to the Clerk

for the amount owed by RFCC.

The court will call a conference to direct the parties as to how they should proceed in the

submission of further evidence to the court.  The court will not issue a final order in this matter

until it has determined the amount due to the Clerk for his cost of completion.

New Orleans, Louisiana, August 22, 2007.

Jerry A. Brown
U.S. Bankruptcy Judge

27